THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LATISHA BOYD, et al

  Plaintiffs,

v.

IDEA PUBLIC CHARTER SCHOOL

  Defendant.

Civ. A. No: 1:13-cv-01237 (RCL)
Hon. Royce C. Lamberth

## MEMORANDUM OPINION

Before the Court is a motion for summary judgment by D.T., a minor and ninth grade student, represented by her mother and next friend, plaintiff Ms. Latisha Boyd, to recover approximately $14,000 in attorney's fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B). The defendant, Integrated Design & Electronic Academy Public Charter School ("IDEA PCS"), has filed a cross-motion for summary judgment on the attorney's fees issue. The fees stemmed from administrative proceedings between plaintiff Boyd and defendant IDEA PCS over whether D.T. was receiving appropriate supplemental special education in accordance with the IDEA statute. The result of the underlying administrative action was a consent order reflecting a settlement agreement between the parties to dismiss the complaint against IDEA PCS in exchange for IDEA PCS complying with much of Ms. Boyd's requested relief. IDEA PCS' refusal to pay attorney's fees upon receipt of an invoice resulted in the present litigation.

Both parties have moved for summary judgment on the issue of attorney's fees, and, for the reasons detailed herein, defendant IDEA PCS' cross-motion for summary judgment will be GRANTED, and plaintiff Boyd's motion for summary judgment will be DENIED.

## I.    BACKGROUND

### A.    The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA") was originally passed by Congress in 1970 and has been frequently amended since. *See generally* 20 U.S.C. §§ 1400-67. IDEA's purpose is to ensure that "all children with disabilities have available to them a free appropriate public education" ("FAPE"), § 1400(d)(1)(A), and thus it provides both parents and schools rights and remedies to accomplish its mandate, *see* §§ 1400-15. IDEA is designed to promote a collaborative environment between parents of disabled children and their school districts. *See* § 1414. To comply with that goal, school districts must create an "individualized education program" ("IEP") for each disabled child, with the student's parents, teachers, and counselors working together to determine what is best for the child. § 1414(d). Students must be evaluated every three years for continued eligibility under the IDEA, § 1414(a)(2)(B)(ii), and the school must draft comprehensive plans for long-term improvement as part of these evaluations, §§ 1414(d)(1)(A), 1414(b). Parents are entitled to request new evaluations or updates to IEP's for their child. § 1414(a)(2)(A)(ii). Should parents believe their child's IEP is not adequate, they may file a complaint for an "impartial due process hearing." § 1415(f). If a parent is a "prevailing party" in the hearing action, they may request that "reasonable attorneys' fees" be paid by the school district. § 1415(i)(3)(B).

### B.    Facts of this Case

Since at least 2009, D.T. has been identified as a child with special education needs, and, accordingly, has benefited from an IEP pursuant to the IDEA statute. *See* Def.'s Ex. 6. D.T. began attending IDEA PCS in August, 2012 for ninth grade, Admin. R. at 5, and her IEP was updated with parental approval on October 5th, 2012, Def.'s Ex. 1 ¶ 7. As per IDEA's triennial

2

evaluation requirement, 20 U.S.C. § 1414(a)(2)(B)(ii), a reevaluation was conducted on

November 8, 2012 with both the attendance, consent, and approval of the plaintiff, Def.'s Ex. 1 ¶

8; Def.'s Ex. 6; Admin. R. at 33. Although plaintiff Boyd asserts the evaluations were

inappropriate, Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. 10, ¶ 2-3, ECF No. 15, plaintiffs'

citation to Plaintiff's Exhibit 1 contains no evidence of any fact in support of the claim that Ms.

Boyd disagreed with any evaluation, Pl.'s Ex. 1, nor upon the Court's review of the complete

record did the Court discover any non-conclusory evidence supporting that claim. Even if

plaintiff Boyd's unsupported allegations were to be credited, Ms. Boyd's disapproval was never

communicated to IDEA PCS. Early in 2013, plaintiff Boyd drafted a letter detailing her requests

for additional evaluations for D.T., Pl.'s Ex. 4, but it is undisputed that the defendant never

received this letter due to Ms. Boyd's counsel's mistake in faxing it. Pl.'s Mem. Opp'n Def.'s

Cross-Mot. Summ. J. ¶ 4, ECF No. 15. The first notice IDEA PCS had of Ms. Boyd's

grievances was on February 13, 2013 upon the filing of the administrative complaint with the

State Enforcement and Investigation Division. Admin. R. at 3-5.

As per the IDEA requirement § 1415(f)(1)(B), the parties met for a resolution session on

February 26, 2013, after which IDEA PCS offered in writing the following benefits to the

plaintiffs as part of a settlement agreement:

(1) IDEA PCS will fund an updated comprehensive psychological evaluation with
a cognitive, academic, and clinical component;

(2) In addition, IDEA PCS will conduct for the student a Functional Behavioral
Assessment ("FBA") and prepare a Behavior Intervention Plan ("BIP") within
60 days of the withdrawal of the complaint, barring any unforeseeable
circumstances or delays due to the inability of the contracted evaluator to
complete the assessment within the specified time period;

(3) And offer to schedule a meeting with Parent within 30 days of receipt of the
final evaluation in order to update the IEP;

(4) IDEA PCS will provide Ms. Boyd access to service logs for all special education and related services along with Student's cumulative and special education files; and

(5) These will be provided via email to Parent's counsel within 10 days of the withdrawal of the Complaint.

Def.'s Ex. 2 (reformatted for readability). Plaintiffs' counsel rejected this offer because she sought a "settlement on the record, e.g., consent decree." Def.'s Ex. 3. On March 4, 2013, March 7, 2013 and March 14, 2013, IDEA PCS made substantially the same offer for settlement. Def.'s Ex. 5; Admin. R. at 68; Def.'s Ex. 4. On March 26, a consent order was issued reflecting an agreement between the parties:

IDEA Public Charter School shall take the following actions:

(1) Fund an updated comprehensive psychological evaluation of the student with cognitive, academic and clinical components;

(2) Conduct for the student a Functional Behavioral Assessment ("FBA") and prepare a Behavior Intervention Plan ("BIP") within 60 days of the withdrawal of the complaint, barring any unforeseeable circumstances or delays due to the inability of the contracted evaluator to complete the assessment within the specified time period;

(3) Offer to schedule a meeting with Petitioner within 30 days of receipt of the final evaluation in order to update the student's individualized education program ("IEP");

(4) Provide Petitioner access to service logs for all special education and related services along with Student's cumulative and special education files; and

(5) Provide Petitioner's counsel with the Student's service logs via email within 10 days of the date of this Order.

Admin R. at 56 (reformatted for readability). Throughout the negotiation process, IDEA PCS had made clear that it did not intend to pay Ms. Boyd's attorney's fees, and its refusal to do so led to this lawsuit being filed.

## II.    LEGAL STANDARDS

### A.    Attorney's Fees under IDEA

The IDEA statute entitles parents to bring administrative actions against schools should they believe their child is not receiving a free and appropriate public education. 20 U.S.C. § 1415(f). "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B)(i).

Determining the prevailing party for purposes of recovering attorney's fees is to be guided by the three-part test followed by the D.C. Circuit: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (internal quotations omitted) (citing *Buckhannon Board and Care Home, Inc.*, v. *West Virginia Department of Health and Human Resources*, 532 U.S. 598, 603-06 (2001)); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). However, a determination that the "plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*" is sufficient to deny the plaintiff "prevailing party" status. *Garland*, 489 U.S. at 792.

Although the Supreme Court has ruled that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees," *Buckhannon*, 532 U.S. at 604 (citing *Maher v. Gagne*, 448 U.S. 122 (1980)), there must still be a "chang[e] [in] the legal relationship between [the plaintiff] and the defendant." *Garland*, 489 U.S. at 792 (citing *Hewitt*

5

*v. Helms*, 482 U.S. 755, 760-61 (1987)); *see Bush v. District of Columbia*, 579 F. Supp. 2d 22, 28 (D.D.C. 2008) (holding that hearing officer's order to place student in particular school did not materially alter relationship between parties when school district was "already obligated" to place student in special education school or program).

### B. Summary Judgment Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Particularly "[w]here the court's task is to review an administrative record and apply legal standards to that record, summary judgment is an appropriate vehicle for deciding the case." *Mahler v. U.S. Forest Service*, 927 F. Supp. 1559, 1562 (S.D. Ind. 1996).

A fact is material if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment. *Id.* However, if the non-movant's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

### III. ANALYSIS

Addressing the question whether the relief granted in the consent order confers prevailing party status to plaintiff Boyd, the Court finds that all of the relief granted was already available to Ms. Boyd prior to filing the lawsuit. The IDEA sets out a number of means for parties to resolve their dispute before coming to court, and the attorneys' fees provision exists primarily to compensate parents for legitimate disputes that they may not otherwise be able to bring. Filing a

lawsuit should not be the first step unless the local education agency has done something particularly egregious that is a clear violation of the IDEA.

Proceeding to the merits of this case, the consent decree awarded plaintiff Boyd a psychological evaluation for D.T., a new FBA and BIP, an updated IEP, and D.T.'s service logs and records. The Court considers each in turn, finding that none of the relief materially alters the legal relationship between the parties.

## A. Psychological Evaluation

The *Henry v. Friendship Edison, P.C.S.*, 880 F. Supp. 2d 5, 8 (D.D.C. 2012) court found that an order for a psychological evaluation failed to materially alter the parties' relationship under the *Straus* test largely because the school had no obligation to perform them. Here, defendant IDEA PCS conducted comprehensive behavioral and psychological evaluations on November 8, 2012, part of updating D.T.'s triennials. Def.'s Ex. 6. Thus, as in *Henry*, any "obligation [to perform a new comprehensive psychological evaluation] was contingent on . . . obtaining the parent's consent." *Id.*; *see* 20 U.S.C. § 1414(a)(2)(B)(i). It would therefore have been impermissible (absent filing a suit of its own) for IDEA PCS to perform a psychological evaluation until plaintiff Boyd informed the school and consented to it, and, even after the order, IDEA PCS was not obligated to take any action prior to receiving Ms. Boyd's consent. *See Henry*, 880 F. Supp. 2d at 8. Because Ms. Boyd never communicated her desire to have D.T. reevaluated, the practical effect of the settlement agreement and consent order was simply a request for new evaluations, which IDEA PCS agreed to perform upon receiving Ms. Boyd's consent. At best, such relief is *de minimis*. The fact that the plaintiff chose to inform the school and give consent through a lawsuit rather than a phone call does not entitle her to recover attorneys' fees.

7

**B.  IEP, FBA, and BIP Evaluations**

In regard to the FBA, BIP, and IEP evaluations, plaintiff Boyd had likewise not requested that they be updated prior to the filing of the lawsuit. The FBA "plays an integral role in the development of an IEP," *Harris v. District of Columbia*, 561 F. Supp. 2d 63, 68 (D.D.C. 2008), and the BIP is the end product of an FBA, *see, e.g., Long v. District of Columbia*, 780 F. Supp. 2d 66, 71 (D.D.C. 2011). As part of the IEP, an FBA may be requested by a parent as part of a reevaluation, *see* 20 U.S.C. § 1414, or it may be a tool for intervention if triggered by a school placing a child in an alternative education setting, *see* § 1415(k)(1)(D)(ii). Because both an FBA as a particular aspect of the IEP and the IEP itself are subject to updating upon parental request, Ms. Boyd's failure to make a request indicates that these are, like the psychological assessments above, not a material change in the parties' relationship.

Further, In *Genrette v. Options Public Charter School*, 926 F. Supp. 2d 364, 366-67 (D.D.C. 2013), the court held that when a hearing officer does not conclude that the child was denied a FAPE, an "order to conduct an FBA is *de minimis* relief insufficient to support an award of attorneys' fees." Here, the hearing officer also made no finding that D.T. had been denied a FAPE. *See* Admin. R. at 54-56. The facts that IDEA PCS was already obligated to provide an FBA upon request and that it was not doing anything as egregious as denying D.T. a free and appropriate education are sufficient to conclude that the order for the IEP, FBA, and BIP evaluations reflects a *de minimis* change at most.

**C.  Service Logs, Special Education Files, and Records**

As with the other awards, plaintiff Boyd already had the right to "examine all records relating to [their] child." 20 U.S.C. 1415(b)(1). Requiring defendant IDEA PCS to produce the records and service logs, perhaps the most simple request to comply with, was certainly not a

8

material change in the parties' relationship especially considering the fact that IDEA PCS had provided Ms. Boyd with written notice of her rights to review the records both on October 5, 2012 and on November 8, 2012 when D.T. underwent IDEA evaluations. Def.'s Ex. 1 ¶ 9; Def.'s Ex. 7.

However, plaintiff Boyd contends that IDEA PCS' agreement to (1) provide the files to counsel as well as the parent and (2) provide the files within 10 days rather than 45 days are material legal changes entitling them to recover attorneys' fees. Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. 5, ECF No. 15. Even if plaintiff Boyd were correct that providing files to counsel would otherwise alter the legal relationship, the defendant points out that "[t]he right to inspect and review education records under this section includes . . . [t]he right to have a *representative* of a parent inspect and review the records." 34 C.F.R. 300.613(b)(3) (emphasis added). The plaintiff's legal conclusion is contrary to the law.

As far as the 10 days versus 45 days issue goes, plaintiff Boyd offers no evidence that this is anything other than a "professional courtesy" as the defendants claim. Def.'s Mem. Reply to Pl.'s Opp'n 6. It was defendant IDEA PCS who affirmatively offered the 10 day relief because the records were readily available. *Id.*; *see* Def.'s Ex. 1 ¶¶ 7, 12. Certainly it was not something that Ms. Boyd negotiated for. *See* Admin. R. at 2-22, 59-72. Even drawing all reasonable inferences in favor of the plaintiff, it is inconceivable that anyone would expend $14,000 in litigation simply to get documents of this nature a few weeks earlier, especially those which it could already have obtained by asking. *See* Def.'s Ex. 1 ¶¶ 7, 12. The order requiring release of the records within 10 days is a *de minimis* change in the legal relationship between the parties.

**D.     Consent Order**

Plaintiff Boyd's only remaining argument, that simply agreeing to a consent order is sufficient to warrant prevailing party status, is erroneous.  Contrary to Ms. Boyd's position, a consent order *itself* is not favorable relief.  Rather, it is the relief obtained under the consent order that must be examined, and because here the eventual settlement was substantially the same on February 26, 2013, when it was first offered, and March 26, 2013, when the decree was entered, plaintiff Boyd's argument does not succeed.  Taken together with the fact that plaintiff never informed IDEA PCS of its grievances prior to filing the administrative complaint, and that IDEA PCS immediately offered a settlement agreement in an effort to comply with plaintiff Boyd's request, waiting another month for an unchanged consent order is not worthy of reward.

The claim that "the Plaintiff was denied any opportunity to put on evidence regarding whether or not the Defendant complied with its obligations under the IDEA," Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. 5, is also not true.  With ample opportunity, plaintiff Boyd has failed to point out any evidence that convinces the Court that there is any genuine issue as to material fact.  As such, summary judgment in favor of defendant IDEA PCS is appropriate.

**IV.     CONCLUSION**

For the aforementioned reasons, the Court will GRANT the defendant's cross-motion for summary judgment, and DENY the plaintiff's motion for summary judgment.  The case will be DISMISSED WITH PREJUDICE in a separate order attached to this opinion.

Date : 5/22/14

Royce C. Lamberth
U. S. District Judge

10